UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTONIO DUENAS PENA and<br>JESUS LEON, SR., | Civil No. 07-1578 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |
| CITY OF WORTHINGTON,<br>TIM GAUL, ARMAND ESHLEMAN[1],<br>and BRADLEY CHAPULIS, individually<br>and in their official capacities, | |
| Defendants. | |

Manuel P. Guerrero, **GUERRERO LAW OFFICE**, 148 Farrington Street, St. Paul, MN 55102-2104, for plaintiffs.

Jason M. Hiveley and Jon K. Iverson, **IVERSON REUVERS, LLC**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants.

Plaintiffs Antonio Pena and Jesus Leon, Sr. own and operate the Club de Leones, a restaurant and nightclub located in Worthington, Minnesota. Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that defendants violated their substantive due process rights by revoking their dance club license, and that Worthington Police Sergeant Tim Gaul used excessive force against Leon during an arrest. Plaintiffs also allege that

---

[1] Defendant Eshleman's name appears to be misspelled in the caption of the Complaint, and therefore in the Court's docket, as both parties refer to "Eshleman" throughout their briefing. The Court will order the court caption to be amended to reflect the true spelling of defendant's name to Armand Eshleman.

defendants Eshleman and Chapulis were negligent in issuing plaintiffs a permit for building renovations because the building was not suitable for a dance club. This case is now before the Court on defendants' motion for summary judgment. For the reasons given below, the Court grants in part and denies in part defendants' motion.

## BACKGROUND[2]

In March 2004, defendant City of Worthington sold a commercial property at 415 Ninth Street in Worthington, Minnesota, to a developer for $2500. The developer made substantial renovations and sold the building in October 2005 to plaintiffs Antonio Pena and Jesus Leon, Sr. for $185,000. Plaintiffs intended to open a restaurant and nightclub in the building, and they continued renovations on the building after the purchase, investing approximately $115,000 in additional renovations and equipment. The City of Worthington issued building work permits for the construction. Plaintiffs completed renovations in July 2006 and, one month later, opened the Club de Leones restaurant and nightclub ("the Club").

Worthington Police began receiving complaints of loud music from the Club shortly after it opened to the public. Police received 20 loud music complaints regarding the Club between August 19, 2006 and April 1, 2007. Many of the complaints were made by a young family living next door to the night club. On February 12, 2007, city officials met with Leon to discuss the noise issue. The next day, defendant Armand

---

[2] For purposes of this summary judgment motion, the Court views the facts and evidence in a light most favorable to plaintiffs, the non-moving party.

Eshleman, the Worthington building official, and defendant Bradley Chapulis, Eshleman's supervisor, met with Leon at the Club to discuss ways to abate the noise. Eshleman and Chapulis suggested that Leon contact an acoustics expert, and agreed to compile a list of experts who might be able to help plaintiffs. According to plaintiffs, Eshleman and Chapulis then offered Leon $1 for the property, and told Leon that if he did not pay his taxes the City would simply take the property. Plaintiffs later contacted one of the experts, who estimated that soundproofing the Club would cost between $40,000 and $45,000.

At approximately 11 p.m. on March 16, 2007, Worthington Police Officer Ted Buhner responded to a complaint of loud music coming from the Club. Based on his observations, Buhner issued Leon a citation for violation of the public nuisance ordinance. At 11:47 p.m., Worthington Police received a second loud music complaint regarding the Club. Defendant Tim Gaul, a sergeant with the Worthington Police Department, responded to the call. Gaul knew that the noise complaint was the second one received within an hour. Gaul parked about 50 feet from the Club. From that distance, Gaul could hear loud music coming from the Club in violation of the City's noise ordinance. Gaul and Worthington Police Officer Gertsema then entered the Club in search of the owner.

Gaul located Leon and asked him to go with the officers to the entryway of the building. According to Leon, Gaul told him to shut down the club. Gaul stated in an affidavit that he asked Leon to turn down the music. According to Gaul, Leon responded "Fuck you, my lawyer said that I don't have to, and I'm not going to." (Gaul Aff. ¶ 5.)

Gaul told Leon again to turn down the music, and Leon refused to comply. Leon told Gaul that they should go outside to see how audible the music was from outside the club. According to Leon, Gaul reacted angrily because he believed Leon was making fun of him. Gaul then handcuffed Leon and led him toward the exit door of the Club. Leon alleges that as Gaul was taking Leon out of the building, Gaul pushed Leon forcefully into a door jam. Both Gaul and Officer Gertsema deny that Gaul shoved or pushed Leon after Leon was handcuffed.

Gaul placed Leon in a squad car and drove him to the local jail. Leon's handcuffs were removed once he arrived at the jail. Leon testified that he was able to move his shoulder when the handcuffs were removed but that he experienced pain in his shoulder and neck. Leon alleges that as a result of Gaul's use of force, he suffered a dislocated left shoulder as well as bruises on his upper back, and has continued to experience shoulder and back pain. Leon has also experienced mental health problems following the incident.

On May 29, 2007, the Worthington City Council held a public hearing on the Club's noise issues. Plaintiffs argued at the meeting that they should not have been granted a license to operate a nightclub if the building was not suited for loud music. Plaintiffs' attorney noted that many of the noise complaints had come from the young family next door, and stated that his clients were not willing to put any additional money into the building for sound proofing. The Worthington Director of Public Safety, Mike Cumiskey, also spoke to the City Council about the noise issues, presenting a synopsis of the noise complaints regarding the Club. Based on evidence presented at the hearing, the

City Council voted to revoke plaintiffs' dance club license, noting that plaintiffs had no apparent intention to try to comply with the noise ordinance.

Leon and Pena filed an amended complaint against defendants on July 10, 2007. Count I of plaintiffs' complaint alleges defendant Gaul used excessive force by shoving Leon into a door after Leon was already handcuffed. Count II alleges that Eshleman, Chapulis, and the City of Worthington violated plaintiffs' substantive due process rights by revoking plaintiffs' dance club license. Count III alleges that Eshleman, Chapulis, and the City of Worthington were negligent in allowing plaintiffs to renovate the building and issuing plaintiffs a license to operate a restaurant and dance club, when in fact the building was not appropriately constructed for loud sound.[3] Defendants have filed the instant motion for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the

---

[3] Plaintiffs also alleged in Count IV of their Amended Complaint that city officials revoked their dance club license in retaliation for this lawsuit. Plaintiffs have now withdrawn that claim.

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     LEON'S EXCESSIVE FORCE CLAIM (COUNT I)

### A.     Excessive Force under the Fourth Amendment

The use of force is excessive under the Fourth Amendment if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994).  When considering the particular circumstances, courts consider factors including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or attempted to evade arrest by flight. *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001).  Force that later seems unnecessary does not violate the Fourth Amendment if it was reasonable at the time, giving consideration to the fact that the officer was forced to make a "split-second judgment[]" in a "tense, uncertain, and rapidly evolving" situation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Leon alleges that Gaul pushed him forcefully into a doorframe as he was being led out of the Club to Gaul's squad car in handcuffs.  While defendants dispute Leon's version of events, viewing the facts in a light most favorable to Leon, a jury could reasonably conclude that Gaul's actions were excessive under the circumstances.  The fact that Leon was in handcuffs, walking passively toward the Club exit in front of Gaul, suggests that Leon posed no immediate threat to the safety of the officers or others at the time Gaul allegedly used force.  The Court finds no evidence in the record to suggest that

Leon actively resisted Gaul's attempt to arrest him, and the crime at issue – the violation of a sound ordinance – was essentially non-violent in nature. Based on these facts, a jury may reasonably conclude that Gaul's use of force was a gratuitous act of violence against a passive, helpless suspect, and was thus not objectively reasonable under the circumstances.

Gaul argues that he is nonetheless entitled to summary judgment because Leon suffered only de minimis injuries as a result of the force. The Court must consider the result of the use of force in addition to the circumstances surrounding the use of force in determining whether the force was excessive. *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). "[A] de minimis use of force or injury is insufficient to support a finding of a constitutional violation." *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003). "[A]llegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force." *Foster*, 914 F.2d at 1082.

Here, Leon alleges that he dislocated his shoulder as a result of Gaul shoving him forcefully into a door jam. Defendants counter that there is no evidence in the record to support Leon's claim that he suffered such an injury, noting in particular that Leon's treating physician on the night of the incident never described the shoulder as being "dislocated." However, viewing the facts in Leon's favor, this Court's review of Leon's medical records adequately supports Leon's claim that Gaul's use of force partially dislocated his left shoulder. Leon's medical report dated March 17, 2007, states that Leon's left shoulder was in a "subluxed position" and later noted a "subluxation" of the

left shoulder. (Pl.'s Ex. E.)  Subluxation is generally defined as a partial or incomplete dislocation.  *See, e.g.*, *Stedman's Medical Dictionary* (5th ed. 1982).  While a partial dislocation is admittedly not a grave physical injury, the Court finds that this injury – particularly when considered alongside the allegedly gratuitous use of force after Leon was in handcuffs – constitutes more than a mere de minimis injury, and is thus sufficient to support Leon's excessive force claim.  *See Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (finding "minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition" that resulted from force that was *required* to handcuff and arrest plaintiff were de minimis).  While the nature of the physical injury here may result in only a minimal damages award, that question is for a jury, and not this Court, to decide.  Accordingly, the Court finds sufficient evidence in the record to create a genuine issue of material fact on Leon's Fourth Amendment claim.

### B.     Qualified Immunity

Gaul next argues that even if Leon has sufficient evidence to support his excessive force claim, Gaul is entitled to qualified immunity.  The defense of qualified immunity is available to public officials who have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007).  The defense "allows officers to make reasonable errors so that they do not always err on the side of caution." *Habiger v. City of Fargo*, 80 F.3d 289, 295-96 (8th Cir. 1996) (internal quotations and citations omitted).  The Court conducts a two-step analysis to determine whether qualified immunity is appropriate. First, the Court determines whether the facts alleged, viewed in the light most favorable

to plaintiff, show that the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As outlined above, Leon has set forth sufficient evidence to satisfy this step. Once the Court determines that a constitutional violation has occurred, it then asks whether the right in question was clearly established. *Id.* The Court now turns to that question.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). The salient question is whether the state of the law at the time of the violation gave officers "fair warning" that their alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Viewing the facts in a light most favorable to Leon as the Court must in assessing this motion, the record shows that Sergeant Gaul forcefully shoved a compliant, non-resistant suspect into a door jam, well after he had been handcuffed and with sufficient force to cause a partial dislocation of the suspect's shoulder. The Court finds that a reasonable officer would be on notice that the use of such force in these circumstances would violate the plaintiff's clearly established constitutional rights. *See Mayard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997) (reversing grant of summary judgment on qualified immunity grounds on excessive force claim where the plaintiff alleged she was slapped in the face and punched in the chest while being transported in a squad car in handcuffs). Accordingly, the Court finds that Gaul is not entitled to qualified immunity on Leon's excessive force claim, and denies Gaul's motion for summary judgment with respect to that claim.

## III.   SUBSTANTIVE DUE PROCESS (COUNT II)

Plaintiffs next argue that defendants Eshleman, Chapulis, and the City of Worthington violated their substantive due process rights by revoking their dance club license.  "To prevail on a substantive due process claim, plaintiff must first establish a protected property interest to which the Fourteenth Amendment's due process protection applies."  *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070 (8th Cir. 1997) (internal citations and quotations omitted).  A protected property interest is a question of state law.  *Id.*  Such an interest must be "a legitimate claim to entitlement," rather than a "mere subjective expectancy."  *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, plaintiffs concede that their substantive due process claim is akin to a land use permit claim, and that the applicable legal standard for such a claim requires plaintiffs to show "more than that the government decision was arbitrary, capricious, or in violation of state law." *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992).  Such claims can succeed only if the evidence demonstrates "truly irrational" governmental actions.  *Id.*  (citing *Lemke v. Cass County, Neb.*, 846 F.2d 469, 470-71 (8th Cir. 1987)).  An example of such irrationality might be "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet."  *Id.*  Even allegations of bad faith enforcement of an invalid zoning ordinance generally do not state a substantive due process claim.  *Bituminous Materials, Inc.*, 126 F.3d at 1070.

Viewing the facts in a light most favorable to plaintiffs, the Court finds insufficient evidence in the record to suggest that the City's decision to revoke plaintiffs' dance club license was truly irrational. The minutes from the City Council hearing show that the City heard evidence from both plaintiffs and the City regarding noise issues with the Club. The City Council considered that the Club had received no fewer than 20 noise citations between August 2006 and April 2007. The Council also noted plaintiffs' apparent reluctance to add further sound proofing given the additional costs, and plaintiffs' statement that they should not have been given a dance license if the building was not in fact conducive to such sound. In sum, the record suggests that the City Council had a valid basis upon which to revoke plaintiffs' dance license on grounds that plaintiffs had repeatedly violated city noise ordinances. Plaintiffs have identified nothing in the record to suggest that the revocation was irrational. Accordingly, the Court grants defendants' motion for summary judgment on plaintiffs' substantive due process claim.

## IV.   NEGLIGENCE (COUNT III)

Finally, plaintiffs allege that Eshleman, Chapulis, and the City were negligent in issuing plaintiffs a building permit, knowing that plaintiffs intended to open a dance club in the building, when in fact the building was not suitable for the operation of a dance club because it was not appropriately insulated for sound. Defendants contend that the issuance and enforcement of building permits and codes benefit the general public and thus cannot form the basis for a negligence action. *See Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 803-04 (Minn. 1979) ("[G]eneral duties owed to the entire public rather than a specific class of persons cannot form the basis of a negligence action."); *Hoffert v.*

*Owatonna Inn Towne Motel, Inc.*, 199 N.W.2d 158, 160 (Minn. 1972) ("[A]n individual who is injured by any alleged negligent performance of the building inspector in issuing the permit does not have a cause of action."). Eshleman and Chapulis further argue that they are entitled to official immunity on plaintiffs' negligence claim.

The Court agrees that Eshleman and Chapulis are entitled to official immunity on this claim.[4] Under Minnesota law, a public official is entitled to official immunity from state law claims when the official's duties require the exercise of discretion or judgment. *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990). "[A] public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988). For purposes of official immunity, malice is the "intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). Minnesota courts have held that a municipal employee's decision to issue a building permit is discretionary in nature. *See, e.g.*, *Anderson v. City of Minneapolis*, 178 N.W.2d 215, 217 (Minn. 1970) (finding that "the act of an employee of the city in issuing the building permit in a doubtful case involved an exercise of

---

[4] Because the Court concludes that defendants are entitled to official immunity on plaintiffs' negligence claim, the Court need not decide whether plaintiffs' claim is foreclosed under Minnesota law on a "public benefit" theory. The Court notes, however, that plaintiffs' negligence claim appears to be barred under the unequivocal language of *Hoffert*, 199 N.W.2d at 160. Further, the Court finds insufficient evidence to suggest that the conduct of Eshleman or Chapulis voluntarily created a "special duty" toward plaintiffs. *See Cracraft*, 279 N.W.2d at 806 (setting forth factors to consider in determining whether the "special duty" doctrine applies to a municipality).

discretion" that entitled the employee to official immunity); *McNamara v. McLean*, 531 N.W.2d 911, 914 (Minn. Ct. App. 1995) ("This court has previously granted immunity where the decision-making process being evaluated is similar to that involved in the issuance of a building permit.").

Plaintiffs contend that Eshleman and Chapulis acted with malice in issuing the building permits, pointing to the following: defendants' failure to warn plaintiffs that the building was not conducive to music and dancing; making no efforts to placate adjoining tenants who complained of the noise; and offering Leon $1 for the property, and telling him that if he failed to pay his taxes the City would take the property. Even viewing this evidence in a light most favorable to plaintiffs, the Court is not persuaded that it shows that defendants' decision to issue plaintiffs a building permit was unlawful or a willful violation of plaintiffs' rights. As such, a reasonable jury could not conclude from the facts presented here that defendants acted with malice.

The Court thus concludes that Eshleman and Chapulis are entitled to official immunity on plaintiffs' negligence claim. Because these employees are immune from plaintiffs' negligence claim, the Court also finds that the City of Worthington is entitled to vicarious official immunity on that claim. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998) ("When applicable, vicarious official immunity protects the government entity from suit based on the official immunity of its employee."). For these reasons, the Court grants defendants' motion for summary judgment on plaintiffs' negligence claim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [Docket No. 18] is **GRANTED in part** and **DENIED in part**, as follows:

1.   Defendants' Motion is **DENIED** at to plaintiff Leon's excessive force claim (Count I).

2.   Defendants' Motion is **GRANTED** as to plaintiffs' remaining claims. Counts II, III, and IV of plaintiffs' Amended Complaint are **DISMISSED with prejudice**.

3.   Defendants City of Worthington, Armand Eshleman and Bradley Chapulis are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that the court caption shall be **AMENDED** to reflect the true spelling of defendant's name from "Eshlman" to "Eshleman."

DATED:   August 7, 2008                              s/ John R. Tunheim          _
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                     United States District Judge